IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| **M.M., C.M. and N.M. b/n/f** § | |
| **RHONDA VINCENT** § | |
| **Plaintiffs,** § | |
| § | Civil Action No. 7:19-cv-274 |
| **v.** § | |
| § | |
| **MCALLEN INDEPENDENT** § | |
| **SCHOOL DISTRICT** § | |
| **Defendant.** § | |

## FIRST ORIGINAL COMPLAINT

**NOW COMES** M.M., C.M. and N.M by and through their next friend and natural mother, Rhonda Vincent, (collectively termed "the Plaintiffs" herein) and files this their *First Original Complaint* alleging that the McAllen Independent School District (hereinafter after referred to as "MISD" or the "School District"), violated the various rights of M.M., C.M and N.M. as more specifically pled herein. Plaintiffs reserve the right to re-plead if new claims and issues arise upon further development of the facts, as permitted by law. In support thereof, Plaintiffs would respectfully show this tribunal the following:

### I. PROLOGUE

1. There is now not a week, often even a day that goes by where there is not some media story about the plight of a young person who is bullied, harassed or assaulted at their school. Frankly, it is a national epidemic. Unlike the task of containing the spread of a flu virus by means of vaccines and treatment, this type of epidemic is particularly difficult to treat because often the school district itself, as in the situation described below, is frankly. part of the illness. The School District's failures are troublesome in light of the fact they were on

          notice of the bullying and harassment each child experienced and did nothing about it.

2. For the families there is nothing more sad than seeing their own child suffer. To give meaning to their child's experience they feel often are compelled to tell their story. They feel a duty to do so in the hope that the presentation of their story will prevent the same from happening to another family. In the course of this telling, these victims benefit from a healing effect. The healing and empowering effect is even more pronounced when the story is told before a neutral federal judge, as the Plaintiffs have chosen to do in this case, so that the bright light and sanitizing effect of federal law and the federal judge's gaze is focused on this important issue and the School District's failures.

## II. BRIEF INTRODUCTION TO THE CASE

3. Over the course of a significant period of time M.M., a student with a disability, was a victim of bullying and harassment based upon his disabilities, while a student at the McAllen Independent School District. In fact he was a victim of bullying and harassment, for all practical purposes, almost every day he attended school. And numerous times per day. Mother complained to staff over and over about the bullying and harassment but they failed to respond. Not surprisingly M.M.'s mental health deteriorated, so much so he required inpatient mental health services. As such, and as will be fully described below, he now bring forth claims pursuant to Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. §794 and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12131 et seq, for contentions he was a victim of discrimination based upon disability.

4. Additionally, because his mother complained so much on his behalf and he was a continuous object of derision his brother C.M. attempted to assist M.M. in warding off the bullies, and many times. Mother complained about C.M. also being a victim of bullying and harassment

of these same students but to no avail. On one particular occasion he was beat up so badly he had a swollen face, a concussion and required hospital care. He too has a claim pursuant to Section 504 and the ADA as he was a victim of retaliation because of both his own, and his mother's advocacy on behalf of M.M., a child with a disability.

5. Their sister, N.M. was also bullied and sexually harassed by another student. As she had done with her two sons, mother complained to school officials who again did nothing. As such, N.M. brings forth a claim against the School District pursuant to Title IX Of The Educational Acts of 1972, 20 U.S.C. §1681-1688 ("Title IX").

6. It is because of this failure of the School District to protect each child, even after numerous School District Officials and even the School Board became well aware of the problems that they now each bring claims against the School Board for violations of the rights pursuant to the *Due Process Clause* of the 14th Amendment to the United States Constitution, as protected by 42. U.S.C. Section 1983.

## II. JURISDICTION

7. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C.A. §1331 and §1343 because the matters in controversy arise under the Constitution and the laws of the United States. This Court also has jurisdiction pursuant to award attorney's fees and costs to the Plaintiffs under also pursuant to 42 U.S.C. §2000d et seq. and 42 U.S.C. §1988.

## III. VENUE

8. Under 28 U.S.C. §1391, venue is proper before this Court because the events and omissions giving rise to the Plaintiffs' claims occurred in the Southern District of Texas, McAllen Division.

## IV. PARTIES

9. M.M., C.M. and N.M. each live with their mother, Rhonda Vincent now in Borger, Texas. For the time period relevant to this complaint, they lived within the McAllen ISD catchment area.

10. The McAllen Independent School District is a school district organized under the laws of the State of Texas. At all times pertinent to this case, M.M. and C.M. were students at the MISD. They may be served by and through their Superintendent, Dr. Jose A. Gonzalez at 2000 N. 23rd St., McAllen, Texas 78501.

## VI. STATEMENT OF FACTS

A. ABOUT THE McALLEN INDEPENDENT SCHOOL DISTRICT

11. The McAllen Independent School District has long had and re-authorized policies and procedures related to *Student Welfare* and keeping students free from Discrimination, Harassment & Retaliation, that address among other things, including student upon student bullying, harassment and even sexual harassment and assault.

12. It sets out definitions of bullying and harassment, information about reporting such allegations and their own investigatory procedures. It required allegations of bullying and harassment based upon disability to directed to the School District's Section 504 Coordinator or designee and if related to sex or gender, the District's Title IX Coordinator or designee. Further, the parent should be given that person's contact information. The family also was required to receive actual notice of their procedural rights under both statute's. For instance and for both, the school district's investigation needed to be completed in a timely manner and usually in less than 10 days, that a written report should be developed and interim action taken, as appropriate. The report must address whether or not prohibited contact occurred and must be filed with the relevant School District Official. If a parent is not satisfied with

the outcome of the investigation, they have the right to appeal the decision through the District's grievance procedure or even with the Office of Civil Rights with the U.S. Department of Education.

13. The School Board Policies on both Section 504 and Title IX note a non-exhaustive list of potential corrective actions. They include a training program for the victim and perpetrators, a comprehensive education program for the school community and counseling to the victim and perpetrators(s). Importantly, there needed to be a system in place to follow-up and determine if new incidents had occurred and the effectiveness of those provided. There is also discussion of increasing staff monitoring and assessment of the problem.

14. The McAllen Independent School District policy and procedures which were developed to address bullying, harassment and assault and even sexual assault were all based upon long-standing jurisprudence on the topic of discrimination based upon disability or sex. Such policies and procedures relied upon federal constitutional and statutory, as well state law; federal and state rules and regulations; relevant caselaw and guidelines from the United States Department of Education *Office Of Civil Rights* all setting out guidelines for professional standards of care.

B. ABOUT THE N.M.

15. N.M. was born on August 4, 2008. During the course of the entire 2015-2016 School Year she attended the Jackson Elementary School with this School District. Early on in the year a little boy, mother thinks his name was A.J. would put attempt to pick N.M up. He would also put his hands in her vaginal area. Mrs. Vincent complained to the School Principal on a number of occasions and she would take care of the problem, but she did not. The problem

continued, over and over again. Mother would complain, in fact well over a dozen times that school year, but to no avail. She also complained to Student Services but staff there failed to address the issue as well. Not surprisingly the physical harassment escalated and so did verbal harassment, and soon with overt sexual overtones. Mother continued to complain and nothing occurred. Finally the school year ended. While the harassment ended the effects of it has not. N.M. is very, very shy around boys and does not like to sit near them. Now eleven years old she tends to stay with girls at school and when a boy recently approached her, she punched him to get away.

C. ABOUT M.M.

16. M.M. was born on December 6, 2003. He is diagnosed with *Attention Deficit Hyperactivity Disorder* ("ADHD") and a mood disorder. He also suffers from bipolar disorder. M.M. is also diagnosed with anxiety and depression. Because of his depression and related social problems, M.M. typically did not care what he looked like. He would dress in the designated uniform for school, but would not care if it fit correctly or was dirty. Sometimes he put his uniform over his pajamas. He almost always wore a hoodie over his uniform. Also during the period made the basis of this complaint, M.M. was shorter and weighed more than other children his age. His multiple disabilities effected his thinking, education and social skills. MM. did on occasion see a Counselor at school. When he left class to go see the Counselor other students would make fun of him. Over the course of time he was frequently pushed by other students in the hallway and in other areas of the school grounds. He was frequently bullied in and around physical education class. He was called "pussy", "fucker", "bitch" and "retard." Ms. Vincent took her son to the physician to treat his various injuries. She reported her concerns to Travis Middle School Assistant Principal Kyle Pugh, but he failed to

investigate or remedy any of her complaints.

17. M.M. began skipping gym because of this incident. He would wander the school without anyone knowing where he was. District personnel would occasionally inform Ms. Vincent that M.M. was wandering, but often they would not and it would leave M.M. unsupervised for large portions of the day. Ms. Vincent requested that M.M. be provided an aide to go with him to the bathroom, among other places, and make sure that he returned to his classroom but this request was refused. The bullying and harassment increased.

D. ABOUT C.M.

18. C.M. was born on June 14, 2005. During this same period C.M. began cutting himself to "fit in." Mother spoke to the School Counselor about her concerns but nothing occurred. She attempted to speak with Student Support Services and again "nothing" happened. She then asked to speak with the School Superintendent and Board of Directors but again received no response. Finally, Ms. Vincent went on local television to discuss the cutting issue. The School Board now became aware of Ms. Vincent's concerns. Ms. Vincent spoke with the School Superintendent not only about C.M. but also about the harassment N.M. experienced and also about the bullying and harassment M.M. experienced.

E. THE BULLYING OF M.M. ESCALATES

19. In and around mid-February of 2017, a number of students B., A.D., H., O., A., An., and Ang. all bullied M.M. They called him names and specifically told him to go kill himself, and they they chased him around the school. They also stepped on M.M.'s throat and choked him. M.M. told Mr. Efrain Amaya, the Principal at Travis Middle School about the bullying but he too failed to investigate ore remedy any of these concerns.

20. In and around the beginning of April 2017, M.M. was again being bullied by B., A.D., H.,

        O., A., An., and Ang.  Once again one student pushed M.M. to the ground, stepped on his throat and held him down to the ground with his foot on M.M.'s throat.  The other students threatened him, made fun of M.M. for his disabilities, kicked him and called him names, like "psychopath" and "crazy".  They told him "I'm going to kill your family" and "go kill yourself."  Assistant Principal Pugh was aware of the attack but once again he failed to do anything to investigate mother's concerns about the bullying and harassment, or address M.M.'s needs.

21. A few days later Ms. Vincent went to the Travis Middle School to meet with Assistant Principal Pugh and a School Counselor.  During Assistant Principal Pugh informed Ms. Vincent that he would take care of the bullying but if he did anything, Ms. Vincent was not informed about what was done.  In any case, the students continued to tell M.M. that he should kill himself, that nobody liked him or wanted him at school, continued to call him names and threaten him.

F.    C.M. IS A VICTIM OF RETALIATION

22. By this time C.M., M.M.'s younger brother, decided to help and defend his brother and in doing so, became a target for ridicule, bullying and even assault. On one occasion when C.M. was attempting to protect his brother, C.M. was viciously attacked on the playground especially in and around his stomach.  He started vomiting and became unconscious.  911 was called and he was taken to a hospital. Another student texted M.M. about what happened to C.M. so he hid in the bathroom.  He made a sharp weapon out of the metal part of a pencil and used it to dig into both his arms and wrist in a suicide attempt. One of his friends found out what he was doing and reported the attempted suicide.  One teacher saw the blood on M.M.'s wrists and got the School Counselor involved.  When Ms. Vincent arrived at the

school, Assistant Principal Pugh informed her that M.M. had been missing from classes all day. After this incident, M.M. was unable to return to school because he was put on suicide watch and was hospitalized shortly thereafter.

G.   THE FAILURES OF THE MCALLEN ISD

23.   As noted above, the McAllen ISD has developed policies and procedures to protect a student with a disability, like M.M. be free from bullying and harassment. Those policies gave M.M. and by extension his mother a number of substantive rights.  As a student with a disability M.M. has the right to be educated in a non-hostile educational environment.  He was not educated in a safe and non-hostile educational environment.  He and his mother did not ever receive notice of their procedural rights under the Rehabilitation Act, including who was the District's Section 504 Coordinator, or the investigatory process.  Nor did they ever receive information about how to appeal any District decision if the results of the investigation were deemed to be unsatisfactory by the parent.   Importantly, no person can suffer retaliation because of mother's advocacy on behalf of M.M. In this case C.M. became of victim of retaliation because of such advocacy by his mother, and his own, as well.

24.   Additionally, we know no investigation ever occurred after multiple complaints.  There was never a formal questioning of M.M. or his mother. They never questioned his teachers. Or his Counselor. They never questioned other students.  Further, M.M. did not benefit from any of the remedies the District's own policies mentioned including but not limited to providing him a psychological assessment to deal with the impact of the harassment he experienced.  They never offered or provided school-based counseling services; or to reimburse the family for out-of-pocket expenses related to necessary medical and psychological treatments and counseling; or provide an aide or shadow or escort to observe

him at the school; or provide M.M. a class or program on social skills as to how to deal with the bullying, harassment and assaults. There was no training for mother as to how address her son's decompensating mental state at home. They never separated the perpetrators from M.M. and C.M.

25. Due to the ongoing failure of the School District to control the bullying and harassment M.M. experienced, and the failure to investigate the issues correctly, not surprisingly, M.M., has suffered further indignities and mental anguish and his missed school. He continues to be traumatized by his experience at the McAllen Independent School District to this day and requires mental health services.

26. Additionally and also due to the ongoing failure of the School District to address the bullying and harassment M.M. experienced, C.M. became a victim of retaliation because of the advocacy his mother undertook for both he and his brother. He now has cartilage damage under his eye. He too continues to be traumatized by his experience at the McAllen Independent School District to this day and requires mental health services.

## VII.  STATE ACTION

27. Plaintiffs re-allege and incorporates by reference the paragraphs stated above as fully stated verbatim herein and all those below, will incorporate by reference, as if fully stated therein, those above it.

28. The McAllen ISD Defendant all the staff working in their employ in any and all matters were acting under color of state law when they subjected each student to the wrongs and injuries set forth herein.

## VII.  UNCONSTITUTIONAL UNWRITTEN POLICY, PRACTICES & CUSTOMS

29. Plaintiff contends that the School District Defendant had a number of written policies and

procedures to protect N.M., M.M. and C.M. from bullying, exploitation, abuse and sexual harassment from other students.  Such policies and procedures are intended to protect the constitutional rights of each Plaintiff.

30. These policies and procedures were based upon well-developed and settled federal caselaw, federal rules, directives from federal executive agencies like the *Office of Civil Rights* with the United States Department of Education, directives from the National and Texas Association of School Boards, Texas Law, Texas Rules and Ethical Standards for educational professionals.

31. As we know from the litany of facts noted above, the School Board was on notice of the bullying and harassment that N.M., M.M. and C.M. received but were deliberately indifferent to it, rising to the level of deliberate indifference thereby and a violation of the *Due Process Clause* Fourteenth Amendment of the Constitution of the United States, and for which N.M., M.M. and C.M. each seeks recovery pursuant to 42 U.S.C. §1983.

32. In addition and in the alternative to the above, the School District had actual policies, practices and customs in place, that failed and refused to follow the written policies and procedures developed by the School Board, such failures and refusals, rising to the level of deliberate indifference and a separate violation of the *Due Process Clause* Fourteenth Amendment of the Constitution of the United States, and for which N.M., M.M. and C.M. each seeks recovery pursuant to 42 U.S.C. §1983.

33. In addition, and also in the alternative to the above the School District had an actual policy, practice and custom of failing to correctly *train* staff members in regard to reporting and investigating allegations that a student was a victim of bullying and harassment in general and specifically as to whether the bullying and harassment was because of disability, or

gender and such failures injuring N.M., M.M. and C.M. thereby and giving rise to their claim for violation of rights pursuant to the *Due Process Clause* Fourteenth Amendment of the Constitution of the United States, for which they seek recovery pursuant to 42 U.S.C. §1983.

34. In addition, and in the alternative to the above the School District had an actual policy, practice and custom of failing to correctly *supervise* staff members in regard to reporting and investigating allegations that a student was a victim of bullying and harassment for any reason, thereby and giving rise to their claim for violation of rights pursuant to the *Due Process Clause* Fourteenth Amendment of the Constitution of the United States, for which they seek recovery pursuant to 42 U.S.C. §1983.

35. Each Plaintiff, N.M., M.M. and C.M. experienced injuries because of such failures.

## VIII. VIOLATIONS OF TITLE OF THE EDUCATIONAL ACTS OF 1972

36. Title IX of the Educational Acts of 1972, 20 U.S.C. §1681-1688 ("Title IX") specifically provides for a cause of action against a public school district in certain instances. First the when the claimant must be a member of a protected class and be bullied, harassed, assaulted or sexually assaulted based upon membership in that class. The harassment must be severe and pervasive. Moreover, the Defendant entity must be on notice as to the allegations and be deliberately indifferent to those allegations. The student victim must have experienced a deprivation of educational opportunities and/or other damages. N.M. easily satisfy all these threshold requirements.

37. N.M. further contends that these failures of the Defendant School District to have effective policies, procedures, practices and customs in place to assure she was not a victim of bullying, harassment, or assault based upon gender, violated her rights pursuant to Title IX

of the Education Amendments of 1972 (Title IX), 86 Stat. 373, as amended, 20 U.S.C. § 1681 et seq., upon which they now seek recovery. N.M. experienced injuries because of such violations of Title IX by the School District.

## IX. CLAIMS PURSUANT TO THE REHABILITATION ACT OF 1973

38. Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

39. The McAllen ISD receives federal funds and thus follows the requisites of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. Section 794.

40. Plaintiffs assert that because the Defendant School District has failed and refused to provide M.M. a safe and non-hostile educational environment, such failures as noted above, have together and separately, contributed to violating his rights pursuant to Section 504 and the federal rules and regulations promulgated pursuant thereto.

41. In a similar but separate vein, and likewise in addition and in the alternative to the above, the failures denoted herein by the School District professionals was a gross deviation from professional standards of care.

42. Further, M.M. has a private cause of action against the School District for their failure to follow the relevant regulations promulgated pursuant to Section 504.

43. In summary M.M. was a victim of discrimination based upon disability by the acts and omissions of the McAllen ISD. M.M. experienced injuries because of the violations of Section 504 by the School District.

44. Ms. Vincent advocated on behalf of her son M.M., a person with a disability. Her other son C.M. became a victim of retaliation because of her advocacy, and then also because of his own advocacy on behalf of his disabled brother. He too has a cause of action pursuant to

Section 504.  C.M. experienced injuries because of the violations of Section 504 by the School District.

## X.  CLAIMS UNDER THE AMERICANS WITH DISABILITIES ACT

45. Plaintiffs incorporate by reference all the above related paragraphs with the same force and effect as if herein set forth.

46. The facts as previously described demonstrate violations of the Americans with Disabilities Act, 42 U.S.C. §12131, et seq.

47. Due to his status as a special education student, M.M. was also a "qualified individual with a disability" as defined in 42 U.S.C. §12131(2) with his disability affecting his major life activities, as noted above.

48. The MISD is deemed a "public entity" as defined in 42 U.S.C. §12131(1) and the School District receives federal financial assistance so as to be covered by the mandate of the ADA.

49. The MISD provides a facility whose operation constitutes a program and services for ADA purposes.

50. The MISD refused to reasonably accommodate M.M.'s disabilities and modify their services in violation of Title II of the ADA by not having a safe and non-hostile educational environment for him.

51. In addition and in the alkternative, and a related vein, M.M. was a victim of discrimination based upon disability as the District failed to accommodate his disability with trained and correctly supervised staff.

52. M.M. was a victim of discrimination based upon disability by the acts and omissions of MISD.  M.M. experienced injuries because of the violations of the ADA by the School District.

53. Ms. Vincent advocated on behalf of her son M.M., a person with a disability. Her other son C.M. became a victim of retaliation because of her advocacy, and then also because of his own advocacy on behalf of his disabled brother. He too has a cause of action pursuant to the ADA. C.M. experienced injuries because of the violations of the ADA by the School District.

## XI. RATIFICATION AND RESPONDEAT SUPERIOR

54. Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

55. The McAllen ISD ratified the acts, omissions and customs of School District personnel and staff.

56. As a result, the McAllen ISD is responsible for the acts and omissions of staff persons who were otherwise responsible for the safety of N.M., M.M. and C.M.

57. By extension, the McAllen ISD is responsible for the acts and omissions by members of McAllen ISD staff pursuant to the theory of *Respondeat Superior*.

## XII. PROXIMATE CAUSE

58. Plaintiffs incorporate by reference all the above related paragraphs with the same force and effect as if herein set forth.

59. Each and every, all and singular of the foregoing acts and omissions, on the part of the School District, taken separately and/or collectively, jointly and severally, constitute a direct and proximate cause of the injuries and damages set forth herein.

## XIII. DAMAGES

60. Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

61. As a direct and proximate result of the School District each Plaintiff has suffered injuries and damages, for which he is entitled to recover herein including, but not limited to:

    a. Hostile educational environment;

    b. Physical pain in the past;

    c. Physical pain in the future;

    d. Mental anguish in the past;

    e. Mental anguish in the future;

    f. Physical impairment in the past, and

    g. Various out-of-pocket expenses incurred by his family but for the acts and omissions of the School District.

## XIV. ATTORNEY FEES

62. Plaintiffs incorporate by reference all the above related paragraphs, as if fully set forth herein.

63. It was necessary for Plaintiffs to retain the undersigned attorneys to file this lawsuit. Upon judgment, Plaintiffs are entitled to an award of attorney fees and expert(s) fees and costs pursuant to Title IX, Section 504, ADA and Title IX pursuant to 42 U.S.C. §2000d *et seq.*

## XIV. DEMAND FOR A JURY TRIAL

64. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a jury trial for all issues in this matter.

## XV. PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs pray for judgment against the District in the manner and particulars noted above, and in an amount sufficient to fully compensate them for the elements of damages enumerated above, judgment for damages, recovery of attorney's

fees and costs for the preparation and trial of this cause of action, and for its appeal if required, pursuant to Section 504, the ADA, Title IX and 42 U.S.C. § 2000d et seq.; together with pre- and post-judgment interest, and court costs expended herein, as well as the equitable issues noted above; and for such other relief as this Court in equity, deems just and proper and for such other relief as the Court may deem just and proper in law or in equity.

                                              Respectfully submitted,

                                              /s/ *Martin Cirkiel*
                                              Martin J. Cirkiel
                                              Federal ID No. 21488
                                              SBN 00783829
                                              Cirkiel & Associates, P.C.
                                              1901 E. Palm Valley Boulevard
                                              Round Rock, Texas 78664
                                              (512) 244-6658 [Telephone]
                                              (512) 244-6014 [Facsimile]
                                              marty@cirkielaw.com [Email]

                                              ATTORNEY FOR PLAINTIFFS